STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANN LUOTTO WOLF (Cal. Bar No. 137163)
Assistant United States Attorney
Santa Ana Branch Office
    United States Courthouse
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3533
    Facsimile: (714) 338-3564
    E-mail:    ann.wolf@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                 v.<br><br>DAVID JAMES ANGEL,<br><br>            Defendant. | Case No. SA CR 21-148-DOC<br><br>GOVERNMENT'S OPPOSITION TO<br>DEFENDANT'S MOTION TO SUPPRESS;<br>DECLARATION OF MIGUEL SANCHEZ;<br>EXHIBITS<br><br>Hearing Date: July 11, 2022<br>Hearing Time: 9:30 a.m.<br>Location:    Courtroom of the<br>                 Hon. David O. Carter |

    Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorney Ann Luotto Wolf,
hereby files its opposition to the Motion to Suppress filed by
defendant David James Angel.

///

///

///

1    This opposition is based upon the attached memorandum of points

2  and authorities and declaration of Parole Agent Miguel Sanchez, the

3  files and records in this case, and such further evidence and

4  argument as the Court may permit.

5   Dated: July 5, 2022              Respectfully submitted,

6                                    STEPHANIE S. CHRISTENSEN
                                     Acting United States Attorney
7
                                     SCOTT M. GARRINGER
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9

10                                     /s/ Ann Luotto Wolf
                                     ANN LUOTTO WOLF
11                                   Assistant United States Attorney

12                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3    On February 11, 2021, convicted felon David James Angel

4  ("defendant") was on active parole with full search conditions.

5  Following defendant's arrest for a parole violation, Parole Agent

6  Miguel Sanchez, accompanied by officers with the Long Beach Police

7  Department, conducted a parole search of defendant's residence of

8  record in Anaheim Hills.  During the search, Parole Agent Sanchez

9  found a Rental Agreement for a storage space.  Inside the storage

10 space, which law enforcement officers searched after obtaining a

11 warrant, officers found nine firearms and approximately 5,000 rounds

12 of ammunition.[1]

13    Defendant now moves to suppress the firearms and ammunition.

14 Defendant contends the discovery of the storage unit resulted from an

15 unlawful search of the Anaheim Hills residence because the law

16 enforcement officers conducting the search did not have probable

17 cause to believe defendant lived at that address.

18    Contrary to defendant's claims in his motion to suppress, Parole

19 Agent Sanchez had ample probable cause to believe defendant resided

20 at the Anaheim Hills address.  Ten days before the search, defendant

21 told Parole Agent Sanchez he had moved in with his wife who lives at

22 the Anaheim Hills residence, and defendant gave Parole Agent Sanchez

23 the address in Anaheim Hills.  The same day, defendant's wife

24 confirmed that defendant was living with her at the Anaheim Hills

25 residence.  Further, when Parole Agent Sanchez conducted the search

26

27

28        [1] Defendant is charged in a single-count indictment with felon
in possession of firearms and ammunition, a violation of 18 U.S.C.
§ 922(g)(1).

on February 11, 2021, defendant's stepson confirmed defendant resided at the Anaheim Hills residence and directed Parole Agent Sanchez to defendant's bedroom.

Parole Agent Sanchez had probable cause to believe defendant resided at his wife's home in Anaheim Hills at the time of the parole search.  Accordingly, the parole search that resulted in the discovery of the storage unit containing the firearms and ammunition was lawful, and the Court should deny the motion to suppress.

## II.  STATEMENT OF FACTS

As defendant acknowledges in his motion, at the time of the search of the Anaheim Hills residence, defendant was a parolee "'subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without cause.'"  (Motion at 3-4, quoting CA Penal Code § 3067(b)(3).)  Parole Agent Miguel Sanchez was defendant's supervising parole agent.  (Declaration of Miguel Sanchez ("Sanchez Decl."), ¶ 1.)

On January 26, 2021, Parole Agent Sanchez called defendant.  (Sanchez Decl., ¶ 3; Exh. 2.)  Defendant did not answer, and Parole Agent Sanchez left a message for defendant to contact him.  (*Id.*)

On February 1, 2021, defendant called Parole Agent Sanchez.  (Sanchez Decl., ¶ 4; Exh. 2.)  Defendant told Parole Agent Sanchez that he had not contacted parole previously because defendant was too busy moving from his old residence to his new residence.  (*Id.*)  Defendant stated that he went back with his wife, Sandra Angel, and he was now living with her.  (*Id.*)  Defendant gave Parole Agent Sanchez his new address in Anaheim Hills, the code to enter the gated community, and his wife's telephone number.  (*Id.*)  Parole Agent

1   Sanchez instructed defendant to report to the Fullerton Unit Parole
2   Office on February 4, 2021.  (*Id.*)

3        After the telephone conversation, defendant sent Parole Agent
4   Sanchez text messages, in which defendant informed Parole Agent
5   Sanchez that he owned a Rottweiler.  (Sanchez Decl., ¶ 5; Exh. 1.)
6   Defendant assured Parole Agent Sanchez that he had a cage for the dog
7   in the dining room, which would "always be there" when Parole Agent
8   Sanchez went to the house.  (*Id.*)  Defendant also texted photos of
9   the Rottweiler and defendant with his wife.  (*Id.*)  Parole Agent
10  Sanchez replied with texts confirming receipt, reminding defendant
11  that he would see him on Thursday, and providing the Parole Office
12  address.  (*Id.*)

13       The same day, February 1, 2021, Parole Agent Sanchez called
14  Sandra Angel, who verified that defendant was living with her at the
15  Anaheim Hills residence.  (Sanchez Decl., ¶ 6; Exh. 2.)  Parole Agent
16  Sanchez informed Sandra Angel of the parole search policy, and Sandra
17  Angel confirmed there were no weapons at the residence.  (*Id.*)

18       Defendant failed to report to the Parole Office as instructed.
19  (Sanchez Decl., ¶ 7; Exh. 4.)  Parole Agent Sanchez called Sandra
20  Angel, who told him that defendant did not come home the night
21  before.  (*Id.*)  Defendant sent Sandra Angel pictures of his white
22  Mitsubishi, which defendant told her he crashed.  (Sanchez Decl.,
23  ¶ 7; Exhs. 3, 4.)  Sandra Angel texted the photographs to Parole
24  Agent Sanchez.  (*Id.*)  Later the same day, defendant sent Parole
25  Agent Sanchez text messages confirming that he "wreaked [his] car."
26  (Sanchez Decl., ¶ 8; Exh. 5.)

27       On February 11, 2021, at 9:00 a.m., defendant reported to the
28  Fullerton Unit Parole Office and was arrested for having failed to

report to parole.  (Sanchez Decl., ¶ 9.)  Following defendant's arrest, Parole Agent Sanchez, accompanied by Officers with the Long Beach Police Department, went to defendant's address of record in Anaheim Hills.  (Sanchez Decl., ¶¶ 10, 12; Exh. 6.)  Defendant's stepson, Cody Cooke, was present and allowed the Parole Agent and Officers inside the house.  (Sanchez Decl., ¶ 10.)  At no time did Cody Cooke state that defendant no longer lived at the residence.  (*Id.*)  To the contrary, Cody Cooke confirmed defendant lived at the home and directed Parole Agent Sanchez upstairs to defendant's bedroom.  (*Id.*)  Further, as defendant had informed Parole Agent Sanchez in his February 1, 2021, text messages, defendant's dog was at the residence in the cage in the dining room.  (*Id.*)

The Officers and Parole Agent Sanchez conducted a search of defendant's bedroom and found no contraband.  (Sanchez Decl., ¶ 11.)  However, while searching the kitchen area, Cody Cooke informed Parole Agent Sanchez that defendant usually kept a stash of illegal narcotics and a handgun on top of the kitchen cabinets.  (*Id.*)  Parole Agent Sanchez searched the top of the kitchen cabinets and found a Rental Agreement for a storage space at Madison Squares Self Storage in Anaheim Hills.  (*Id.*)  The storage rental was in Cody Cooke's name.  (*Id.*)  However, when Parole Agent Sanchez asked Cody Cooke about the Rental Agreement, Cody Cooke informed Parole Agent Sanchez that although the storage agreement was under his name, defendant and Cody Cooke's mother used the unit to store several rifles, shotguns, guns, and ammunition.  (*Id.*)

Thereafter, Anaheim Police Department obtained a search warrant for the storage unit and seized, *inter alia*, the firearms and ammunition charged in the Indictment.

1    **III. ARGUMENT**

2        **A.   Insufficient Support for Motion**

3        Local Criminal Rule 12-1.1 requires that a motion to suppress

4    "be supported by a declaration on behalf of the defendant, setting

5    forth all facts then known upon which it is contended the motion

6    should be granted."  In the motion, defense counsel asserts, *inter*

7    *alia*, "the residents" informed the Parole Agents that defendant "no

8    longer lived at [the Anaheim Hills] address."  (Motion at 3.)

9    Notably, not only is no such "resident" identified, no such

10   "resident" submitted a sworn declaration in support of defendant's

11   motion.  Rather, defendant's motion is supported by nothing more than

12   an unsigned statement purporting to be the Declaration of David James

13   Angel, and even that statement makes no such proclamation about the

14   unnamed "residents."  (Motion at 34-1.)

15       Defendant's contentions regarding his residence at the time of

16   the search of the Anaheim Hills property are not supported by a sworn

17   declaration.  For this reason, defendant's motion to suppress and his

18   request for an evidentiary hearing should be denied.  *See United*

19   *States v. Schafer*, 625 F.3d 629, 636 n.3 (9th Cir. 2010) (failure to

20   file sworn declaration as required by local rules sufficient reason

21   for district court to deny request for evidentiary hearing).

22       **B.   Parole Agent Sanchez Had Probable Cause to Believe**
             **Defendant Resided at the Anaheim Hills Residence**
23

24       The Fourth Amendment protects "[t]he right of the people to be

25   secure in their . . . houses . . . against unreasonable searches and

26   seizures."  U.S. Const. amend. IV.  "[I]t is a 'basic principle of

27   Fourth Amendment law . . . that searches and seizures inside a home

28   without a warrant are presumptively unreasonable.'"  *United States v.*

                                    5

*Ped*, 943 F.3d 427, 430 (9th Cir. 2019) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).  "Parolees, however, have severely diminished expectations of privacy by virtue of their status, and they may be subject to warrantless searches of their homes without a warrant or suspicion of wrongdoing."  *Ped*, 943 F.3d at 430 (citations and quotations omitted).  "That is true even if other people also live there."  *Id.*

"To protect the interests of third parties, officers must have probable cause to believe that the parolee is a resident of the house to be searched."  *Id*. (citations and quotations omitted); *see also United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013). "Probable cause as to residence exists if an officer of reasonable caution would believe, based on the totality of the circumstances, that the parolee lives at a particular residence."  *Ped*, 943 F.3d at 431 (citations, quotations, and punctuation omitted).

Here, at the time Parole Agent Sanchez and the other officers conducted the parole search of the Anaheim Hills residence, they had ample probable cause to believe that defendant resided at the home with his wife.  First, defendant so informed Parole Agent Sanchez ten days before the search.  (Sanchez Decl., ¶ 4.)  Second, ten days before the search, defendant's wife confirmed defendant was living with her at the Anaheim Hills residence.  (*Id.*, ¶ 5.)  Third, in the days before the search, Parole Agent Sanchez had additional communications with defendant and his wife, in which they indicated the Anaheim Hills residence was defendant's home.  (Id., ¶¶ 5-7.) Fourth, before the search, defendant's stepson, who was present at the Anaheim Hills residence, confirmed defendant lived at the residence and directed Parole Agent Sanchez to defendant's bedroom.

1    (*Id.*, ¶ 10.)  Fifth, as defendant had previously indicated to Parole

2    Agent Sanchez, defendant's dog was in her crate at the residence.

3    (*Id.*)  Whether or not, as defendant claims in the Motion, defendant

4    may have maintained another residence in Orange, *see Grandberry*, 730

5    F.3d at 978 n.9 (noting that a parolee may have more than one

6    residence subject to warrantless search), the totality of the

7    circumstances establishes probable cause that defendant resided at

8    the Anaheim Hills property at the time of the search.  Accordingly,

9    the Court should deny defendant's motion to suppress.

10           **C.    Law Enforcement Officers Searched the Anaheim Hills**
                    **Residence in Good Faith**

11

12           The Fourth Amendment protects the "right of the people to be

13   secure in their persons, houses, papers, and effects, against

14   unreasonable searches and seizures."  The Supreme Court created the

15   exclusionary rule to "compel respect for the constitutional

16   guaranty," and its "sole purpose . . . is to deter misconduct by law

17   enforcement."  *See Davis v. United States*, 564 U.S. 229, 236-37, 246

18   (2011).  It may only be employed where it will effectively deter

19   police misconduct – "[r]eal deterrent value is a necessary condition

20   for exclusion."  *Id.* at 237.  Exclusion is a rule of "last resort,"

21   and should be used sparingly:

22           Exclusion exacts a heavy toll on both the judicial system
             and society at large.  It almost always requires courts to
23           ignore reliable, trustworthy evidence bearing on guilt or
             innocence.  And its bottom line effect, in many cases, is
24           to suppress the truth and set the criminal loose in the
             community without punishment.  Our cases hold that society
25           must swallow this bitter pill when necessary, but only as a
             last resort.
26

27

28

*Id.* at 237 (quotation marks and citations omitted); *see also Herring v. United States*, 555 U.S. 135, 140 (2009) ("exclusion has always been our last resort, not our first impulse").

In analyzing the applicability of the exclusionary rule, the Court must consider the actions of the law enforcement officers involved.  The "'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'"  *Herring*, 555 U.S. at 145 (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).  In this case, Parole Agent Sanchez relied on statements made by, and information received from, defendant and defendant's wife.  Further, the representations made by defendant and Sandra Angel to Parole Agent Sanchez were corroborated by defendant's stepson, as well as the presence of defendant's dog.  Parole Agent Sanchez relied on that information in good faith.  "[E]vidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment," *Herring*, 555 U.S. at 143, and, here, Parole Agent Sanchez had no such knowledge.  Accordingly, the Court should deny defendant's motion to suppress.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress.